# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. FISHER; THOMAS FISHER; EUGENE FISHER; DICKINSON READY MIX, a North Dakota corporation; FISHER INDUSTRIES, INC., a North Dakota corporation; INTERNATIONAL TECHNICAL COATINGS, INC., an Arizona corporation; and JOHNNIE L. CALDWELL, <br><br> Plaintiffs, <br><br> v. <br><br> THYSSEN MANNESMANN HANDEL GMBH, a German corporation; KARL-MARTIN KRAMER; SASCHA CLEVERS; JAN CLEAVER; and DAVID SCHWEIGERT, <br><br> Defendants. | Case No. 05 C 6193 <br><br> Hon. John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed suit in the Circuit Court of Cook County, Illinois, seeking equitable and declaratory relief regarding Plaintiffs' rights under an agreement reached among the parties on February 2, 2005. Subsequently, Defendant David Schweigert removed Plaintiffs' suit to federal court. Presently before the Court is Plaintiffs' Motion to Remand Improvidently Removed Case, *Instanter*.

## BACKGROUND

The following is based on the allegations of Plaintiffs' Verified Complaint.

Plaintiff Dickinson Ready Mix is a North Dakota corporation. Plaintiff Michael Fisher is a resident of North Dakota and a shareholder and officer in Dickinson Ready Mix and Fisher Industries. Plaintiff Thomas Fisher is a Arizona resident and an officer and the majority shareholder

of International Technical Coatings ("ITC"), an Arizona corporation. Plaintiff Johnnie Caldwell is a resident of Arizona and the President of ITC. ITC is in the business of manufacturing shelving units for businesses. Plaintiff Eugene Fisher is a resident of North Dakota and the founder of Fisher Industries, a North Dakota corporation. Fisher Industries is in the business of purchasing steel.

Defendant David Schweigert is also a North Dakota resident and an attorney licensed to practice law in North Dakota. Defendant Thyssen Mannesmann Handel GMBH ("Thyssen") is a German corporation that acts as a broker between purchasers of steel and steel mills and accepts liability and responsibility for steel shipments. Defendants – Sascha Clevers, Jan Cleaver, and Karl-Martin Kramer – are residents of Germany and Thyssen employees.

In early 2004, Clevers, a Thyssen purchasing agent, informed ITC that he could locate and acquire enough steel to meet ITC's demands. Following negotiations among ITC, Fisher Industries, and Thyssen, the parties entered into an agreement for the purchase of approximately $14 million of steel from Thyssen. The contract among Thyssen, ITC, and Fisher contains a forum selection clause. The contract provides, in relevant part:

> 1. Unless agreed to the contrary, the place of performance for our deliveries shall be the mill in the case of delivery ex works. Any disputes shall at [Thyssen's] discretion be referred to the courts of law responsible for the city in which [Thyssen's] main office is located [Dusseldorf, Germany] or in which the Buyer is domiciled.
>
> 2. All legal relations between [ITC and Fisher Industries] and [Thyssen] shall be subject to German substantive law applicable to the legal relations between domestic parties in addition to these Terms and Conditions. The provisions of the Convention on Contracts for the International Sale of Goods (CISG) of April 11, 1980 shall be excluded.

2

The first shipment of steel was delivered and paid for in February 2004. Upon receipt of the second shipment, ITC discovered that the steel had a material defect. ITC notified Thyssen of the defective steel and informed Thyssen that it was rejecting the delivery based upon a failure to meet the material specifications of the contract. Two more shipments of steel were also received. One of the shipments was determined to be defective, and the second was investigated to determine if it was also defective.

In early 2005, Plaintiffs initiated an action in North Dakota, seeking declaratory, injunctive, and other relief to enjoin a bank from honoring, making payment on or otherwise accepting a letter of credit in connection with ITC's purchase of steel from Thyssen (the "Dakota Action").

As a result of the growing dispute between the parties, the parties agreed to meet on February 2, 2005, in Chicago, Illinois, in an effort to resolve numerous issues regarding the first defective shipment. Thyssen employees present on February 2 included Clevers, Kramer, and Cleaver. In addition, Schweigert was present as counsel for Thyssen.

At the commencement of the February 2 meeting, ITC presented a chart that set forth the amount of steel in each shipment that ITC purchased from Thyssen as well as the amount due on each shipment. Throughout the settlement negotiations, all individuals present referred to, utilized, and relied upon the chart as a basis to discuss the relevant issues. Unbeknownst to Plaintiffs, the chart contained a material error. Specifically, the chart listed an invoice amount of a shipment as $5,846,500, when, in fact, the actual amount was $3,948,446.

An agreement was reached; and on February 3, 2005, the parties signed a letter that outlined the terms of the agreement reached among ITC, Fisher Industries, and Thyssen. The letter provided, in part, that when a Release and Settlement Agreement had been executed, $3.5 million would be

paid by letter of credit to be applied to a specific steel delivery. Schweigert specifically requested this provision, stating that the provision was needed by Thyssen to resolve a credit insurance issue that affected Thyssen. Schweigert stated unequivocally that he knew that the parties' agreement did not contemplate the $3.5 million letter of credit actually going toward this one shipment but requested that Plaintiffs agree to the provision in order to assist Thyssen with its credit insurance issue. Plaintiffs agreed to the inclusion of the language.

Within hours of signing the February 3 letter, ITC discovered that the chart relied upon by the parties contained a material mistake. As a result of the mistake, a $9 million figure contained in the letter erroneously included an additional $1,898,054. Within hours of discovering the mistake, ITC sent a letter to Thyssen, Clevers, Cleaver, Kramer, and Schweigert. The letter advised Defendants that the chart contained a material error and that the February 3 letter should be modified to reflect the parties' agreement and the correct amount of $7,101,946. ITC signed a modified February 3 letter, noting that the initial letter was signed based on a mutual mistake and that the parties had been acting in good faith and had no actual knowledge of the mistake.

Thyssen did not respond to ITC's notification of the material mistake. ITC sent another letter on February 8, 2005, indicating that the February 3 agreement contained an error due to the incorrect chart. That same day, Schweigert responded that the Defendants were not aware of what documents on which ITC had relied in the settlement discussions and asserted, for the first time, that the settlement did not include full payment for two of the steel shipments. Schweigert also stated that because the worksheet was labeled "For Settlement Purposes Only," Defendants were not required to "agree with" the information contained in the document.

Schweigert further stated that the provision in the February 3 letter for $3.5 million letter of credit for the one shipment demonstrated that the parties had not agreed to an approximate $1.2 million payment for that shipment. Schweigert made this false statement, knowing that he had specifically represented that the provision was only included to assist Thyssen with respect to a credit insurance issue.

In March 2005, Plaintiffs filed this suit in the Circuit Court of Cook County, seeking declaratory and injunctive relief regarding the settlement agreement among the parties. Count III of the suit, the only count against Schweigert, alleges that the Defendants knew that the $9 million figure was incorrect but ratified, affirmed, and utilized the incorrect chart, intending to have ITC pay almost $2 million in excess of which was owed for two steel shipments.

On October 2005, Schweigert, the only Defendant served, removed the suit to this Court based on diversity jurisdiction. Schweigert alleged that he was fraudulently joined because Plaintiffs do not state a cause of action for fraud against him; therefore, his presence does not prevent diversity jurisdiction.

Plaintiffs argue that the removed action should be remanded to state court because Schweigert was not fraudulently joined; therefore, his presence as a party defendant removes the basis of diversity jurisdiction.

In considering a motion to remand, a court's focus is restricted to its authority to hear the case pursuant to the removal statute. 28 U.S.C. § 1441. Whether removal was proper is determined from the record as a whole. *Casey v. Hinckley & Schmitt, Inc.*, 815 F.Supp. 266, 267 (N.D.Ill.1993); *Kennedy v. Commercial Carriers, Inc.*, 739 F.Supp. 406, 409 (N.D.Ill.1990). The party seeking to preserve the removal, not the party moving to remand, bears the burden of establishing that the court

has jurisdiction. *Jones v. General Tire and Rubber Co.*, 514 F.2d 660, 664 (7th Cir. 1976). If the court finds that it does not have jurisdiction, then it must remand the case to state court. *Casey*, 739 F.Supp. at 267; *Commonwealth Edison Co. v. Westinghouse Elec. Co.*, 759 F.Supp. 449, 452 (N.D. Ill.1991).

A court's diversity jurisdiction is limited – no plaintiff may be a citizen of the same state as any defendant. *See Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1314-15 (7th Cir. 1994) (*Hoosier*). However, diversity jurisdiction is not destroyed by the joinder of a nondiverse party if that joinder is fraudulent. *Hoosier*, 34 F.3d at 1315. "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). The burden of proving fraudulent joinder rests on the moving party. *See Ontiveros v. Anderson*, 635 F. Supp. 216, 218 (N.D. Ill. 1986) (*Ontiveros*). All factual issues and questions of substantive law are evaluated in plaintiff's favor. *See Ontiveros*, 635 F. Supp. at 218. "If there is even a possibility that a state court would find that the complaint states a cause of action against the resident defendant, the district court must find that the joinder was proper and remand the case to the state court." *Ontiveros*, 635 F. Supp. 218-19.

Contrary to Schweigert's assertion, based on Plaintiffs' allegations, it cannot be said that there is no possibility that Plaintiffs could state a cause of action for fraud against Schweigert in an Illinois court.

In Illinois, common law fraud consists of: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement

6

induce the plaintiff to act; (4) reliance by the plaintiff upon the truth of the statement; and (5) damages resulting from that reliance. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1997). Plaintiffs have pled that Schweigert made false statements, knowing they were false, and intended Plaintiffs to rely on those statements. The Plaintiffs allege that they did rely on the statements and that they suffered damages as a result. Accordingly, there is a possibility that Plaintiffs could state a cause of action for fraud against Schweigert in an Illinois court.

Schweigert also argues that a forum selection clause bars Plaintiffs from asserting a fraud claim against Schweigert in Illinois.

A contract provision that makes it impossible to maintain a cause of action against a defendant can constitute fraudulent joinder. *See Hoosier*, 34 F.3d at 1315-16 (non-recourse provision in contract prevented maintenance of suit against defendant – constituting fraudulent joinder).

The present suit centers around an attempt by the parties to settle certain disputes among them, including the pending litigation between the parties in the North Dakota suit related to ITC's purchase of steel from Thyssen. Schweigert and the majority of the Plaintiffs (five of the seven) are not parties to the contract containing the forum selection clause. While Schweigert was an agent for Thyssen in the settlement negotiations that are the basis of the instant suit, there are no allegations that he was also Thyssen's agent for purposes of the contracts or other stated reasons to make the forum selection clause applicable to him. *See Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (party must be "closely related" to the dispute that it is "foreseeable" that he would be bound). Furthermore, the present dispute does not involve the performance of the contract or fraud related to the contract containing the forum selection clause. *Cf., American Patriot Ins.*

7

*Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (forum selection clause applied to claims of fraud relating to the contract).

Based on the above, and resolving all factual issues and questions of substantive law in Plaintiffs' favor, Schweigert has not demonstrated that he was fraudulently joined. Accordingly, complete diversity does not exist; and the cause is remanded to state court.

Plaintiffs also seek costs and expenses incurred as a result of the removal that Schweigert improperly filed pursuant to 42 U.S.C. § 1447(c).

Section 1447(c) provides that payment of costs and actual expenses, including attorney's fees, incurred as a result of a removal that is being remanded may be awarded. *See* 42 U.S.C. § 1447(c). An award of costs and fees pursuant to Section 1447(c) is within the court's discretion. *See Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 710 (2005) (*Martin*). Absent unusual circumstances, costs and fees should not be awarded if the removing party had an objectively reasonable basis for the removal. *See Martin*, 126 S. Ct. at 708.

No unusual circumstances have been brought to the Court's attention, and Schweigert had an objectively reasonable basis for seeking removal. Accordingly, costs and fees are denied.

For the reasons stated above, Plaintiffs' Motion to Remand Improvidently Removed Case, *Instanter*, is granted. Plaintiffs' request for costs and fees is denied.

Dated: January 19, 2006

JOHN W. DARRAH
United States District Judge